UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JORGE GUILLERM QUINONEZ VELEZ et al.,

         Plaintiffs,

v.

DONALD EMERSON,

         Defendant.
_____/

Case No. 1:20-cv-516

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by five federal prisoners under under *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). After careful review of Plaintiffs' allegations, the Court will dismiss Plaintiffs' complaint for failure to state a claim.

**Discussion**

I. **Factual allegations**

Plaintiffs Jorge Guillerm Quinonez Velez, Jorge Ramos, Fortunato Sandoval Aviles, Moises Gamboa, and Juan Carlos Porras Quintero are presently incarcerated at the North Lake Correctional Institution in Baldwin, Michigan. The events about which they complain occurred at that facility. Plaintiffs sue Warden Donald Emerson.

Plaintiffs allege that Defendant failed to take important measures to control the spread of COVID-19 and protect inmates prior to April 20, 2020. Before that date, Defendant permitted staff to arrive at the prison without valid protective equipment, such as masks, and Defendant did not provide inmates with masks or sufficient soap. Defendant also was not successful in maintaining social distancing between staff and prisoners. Plaintiffs state that from April 20, 2020, to May 10, 2020, sixty-five percent of inmates were positive for COVID-19. Plaintiffs state that COVID-19 is a ticking time bomb at the prison, which places them in danger of serious injury or death.

Plaintiffs state that the failure to address the risk of COVID-19 at the prison violates their rights under the Eighth and Fourteenth Amendments. Plaintiffs seek immediate release or immediate deportation to their home countries.

II. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. Cognizability of claim as a Bivens action

Plaintiffs filed this action as a *Bivens* claim. In *Bivens*, 403 U.S. 388, the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). This implied cause of action is "the federal analog to suits brought against state officials" under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). To state a claim that is cognizable in a *Bivens* action, the plaintiff must plead two essential elements: first, that he has been deprived of rights secured by the Constitution or laws of the United States, and second, that the defendants acted under color of federal law. *Bivens*, 403 U.S. at 397. "A *Bivens* remedy is available only if (1) there are no 'alternative, existing process[es]' for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no 'special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Left Fork*, 775 F.3d at

3

774 (quoting *Wilkie*, 551 U.S. at 550). "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Thus, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (citation omitted).

Plaintiffs state that they are seeking immediate release from detention or immediate deportation to their home countries. Therefore, Plaintiffs complaint clearly implicates the fact or duration of their confinement. Section 2241 authorizes district courts to issue a writ of habeas corpus to a state or federal prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Where, as here, a prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus. *See Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973). Because there is an alternative existing process for protecting the right being asserted by Plaintiffs in this action, a *Bivens* remedy is unavailable to Plaintiffs.

**IV.     Eighth and Fourteenth Amendment claims**

Even if a *Bivens* action were available to Plaintiff, his Eighth and Fourteenth Amendment claims would be properly dismissed on the merits.

**A.     Eighth Amendment**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-

4

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually

knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit squarely held that the significant risk posed by COVID-19 met the objective prong of the deliberate-indifference standard. *Id.* at 840. In addition, in evaluating the subjective component, the *Wilson* court concluded that, because the seriousness of the risk of COVID-19 was obvious, the court could permissibly conclude that Defendants were aware of the risk. *Id.* at 841 (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Therefore, as in *Wilson*, the remaining inquiry before this Court is whether Defendants, by their actions, "responded reasonably to the risk." *Id.* at 841 (quoting *Farmer*, 511 U.S. at 844).

In *Wilson*, the court considered the actions taken by the BOP to mitigate the risk of COVID-19 contagion, including the following:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* (quoting CA6 R. 35, Appellant Br., PageID 42). The Sixth Circuit noted that other Sixth Circuit decisions had found similar responses to contagious diseases by prison officials and medical personnel—such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread—to be reasonable. *Id.* at 841 (*citing Wooler v. Hickman Cty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448-49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519-20 (6th Cir. 2008); *Rhinehart v. Scutt*,

6

894 F.3d 721, 740 (6th Cir. 2018). Further, the *Wilson* court observed that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19. *Id.* at 842 (discussing *Swain v. Junior*, 958 F.3d 1081, 1085 (11th Cir. 2020), *Valentine v. Collier,* 956 F.3d 797 (5th Cir. 2020) (per curiam), and *Marlowe v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam).

Reviewing the measures taken by the BOP, the *Wilson* Court held that, even if the BOP's response to COVID-19 was inadequate to prevent all contagion, the affirmative actions it took to not only treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19, constituted a reasonable response to the risk. The court therefore held that, because the BOP neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843.

The GEO group, which both owns and operates the North Lake Correctional Institution under contract with the BOP, has taken numerous measures to address the threat posed by COVID-19 in its facilities:

> **As the COVID-19 pandemic has impacted communities across the United States and around the world, our employees and facilities have also been impacted by the spread of COVID-19. Ensuring the health and safety of our employees and all those in our care has always been our number one priority. As a longstanding provider of essential government services, we have experience with the implementation of best practices for the prevention, assessment, and management of infectious diseases.**
>
> - All of our facilities operate safely and without overcrowded conditions.
> - All of our facilities have access to regular handwashing with clean water and soap.
> - All of our secure services facilities provide 24/7 access to healthcare.
> - All of our U.S. Immigration and Customs Enforcement ("ICE") Processing Centers typically have approximately double the number of healthcare staff, compared to state correctional facilities.
> - Most of our facilities are equipped with Airborne Infection Isolation Rooms.

7

**We have taken the following immediate steps to ensure the health and safety of all those entrusted to our care and our employees:**

- We issued guidance to all our facilities, consistent with the guidance issued for correctional and detention facilities by the Centers for Disease Control and Prevention.
- We updated our policies and procedures to include best practices for the prevention, assessment, and management of COVID-19, including the implementation of quarantine and cohorting procedures to isolate confirmed and presumptive cases of COVID-19, including medical isolation and the use of Airborne Infection Isolation Rooms.
- We provided educational guidance to our employees and individuals in our care on the best preventative measures to avoid the spread of COVID-19 such as frequent and careful handwashing; avoiding touching areas of the face, including facial hair; avoiding individuals exhibiting flu-like symptoms; proper cough and sneeze etiquette; social distancing requirements; and adjustments to laundry and meal schedules.
- We increased the frequency of distribution of personal hygiene products, including soap, shampoo and body wash, and tissue paper, and we are ensuring the daily availability of bars of soap or soap dispensers at each sink for hand washing in all of our facilities.
- We deployed specialized sanitation teams to sterilize high-contact areas of our facilities and have developed intensive schedules and procedures for the cleaning and disinfecting of facility spaces above and beyond normal cleaning activities.
- We procured additional cleaning equipment and sanitation products that are proven healthcare grade disinfectants.
- We advised our employees to remain home if they exhibit flu-like symptoms, and we have exercised flexible paid leave and Paid Time Off policies to allow for employees to remain home if they exhibit flu-like symptoms or to care for a family member.
- We engaged with our government agency partners to promptly suspend non-essential visitation at all of our facilities, and we have employed additional measures during the intake and entry process at all of our facilities to include screening specific to COVID-19, including temperature checks for all staff and any legally required visitors before entering our facilities, as well as, verbal medical screening questionnaires.
- We ordered and received swab kits for COVID-19 from a national supplier, and we enacted quarantine and testing policies for any employees who may have come into contact with any individual who has tested positive for COVID-19.
- At every one of our facilities, we have worked closely with our government agency partners and local health officials to develop COVID-19 emergency plans and testing policies for the individuals in our care.

- In March of 2020, we started procuring additional Personal Protective Equipment and began issuing it as clinically needed at facilities impacted by COVID-19.
- Over the course of April of 2020, we coordinated with our government agency partners to distribute Personal Protective Equipment, including facemasks to all staff, inmates, detainees, and residents as a precautionary measure at all of our Federal Bureau of Prisons facilities, ICE Processing Centers, U.S. Marshals facilities, state correctional facilities, local correctional facilities and jails, residential reentry centers, and youth services residential facilities.

*See* https://www.geogroup.com/covid19.

The measures taken by the GEO group at North Lake Correctional Institution to combat the spread of COVID-19 at the North Lake Correctional Institution, as well as at their other facilities, are comparable to the measures taken by officials in *Wilson*. As the Sixth Circuit noted in *Wilson*, such actions demonstrate the opposite of a disregard of a serious health risk. *Wilson*, 961 F.3d at 841. Although the Court is sympathetic to Plaintiffs' general concern about the COVID-19 virus, they have failed to allege facts showing that Defendant's handling of the COVID-19 crisis demonstrated deliberate indifference or violated their rights under the Eighth and Fourteenth Amendment.

### B. Fourteenth Amendment

Plaintiffs also assert a violation of their substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it

'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiffs concerning their conditions-of-confinement claims. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of

constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Consequently, Plaintiffs fail to state a substantive due process claim.

## V.  Pending motions

Plaintiffs Porras Quintero, Aviles, and Velez have filed motions to proceed *in forma pauperis* in this action (ECF Nos. 5, 6, and 7). Plaintiffs Porras Quintero and Aviles appear to be under the mistaken impression that they each owe the entire filing fee. However, each of these Plaintiffs have already paid their share of the filing, which is $80.00. In addition, Plaintiff Velez has already been granted *in forma pauperis* status and has paid an initial partial filing fee. The Court concludes that because Plaintiffs Porras Quintero and Aviles do not owe any additional money toward the filing fee, and Plaintiff Veles has already been granted pauper status, their motions to proceed *in forma pauperis* are DISMISSED as moot.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2), 1915A, the Court determines that Plaintiff's complaint will be dismissed for failure to state a *Bivens* claim. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*,

by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        An order and judgment consistent with this opinion will be entered.

Dated:   August 19, 2020               /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE